## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JACK D. GORR,**

  **Plaintiff,**

**v.**                                                    **Case No.  8:12-cv-1960-T-17TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

  **Defendant.**

_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is not in accordance with the correct legal standards, I recommend that it be reversed.

### A.

Plaintiff was forty-nine (49) years of age at the time of his administrative hearing. He stands 5'11" tall and weighed 210 pounds, according to his administrative filings. Plaintiff has an eleventh grade education.  He also attended a vocational technical school and a junior college, but never completed the courses.  Plaintiff reported past work as a painter, water delivery driver, busboy, waiter, bartender, restaurant manager and maitre d'.  Plaintiff

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

applied for disability benefits and Supplemental Security Income on June 30, 2008, alleging

disability as of July 10, 2007, by reason of bipolar disorder, schizophrenia, depression.

Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge

(hereinafter "ALJ").  The Plaintiff was represented at the hearing by counsel and testified on

his own behalf.  Additionally, a vocational expert was called by the ALJ.  In essence, Plaintiff

testified that he is unable to work because he is bipolar.

Plaintiff acknowledged some issues with drug and alcohol abuse in the past.  He last

used cocaine about two and half to three years ago prior to the date of the hearing, which was

a relapse after having been sober for about a year and half.  He does not drink alcohol.

Plaintiff does not drive because he has no license.  He stopped driving after he received a DUI

in 1998.

Plaintiff's most recent employment was as a painter for a painting company.  He left

because he butted heads with his boss constantly and was unable to handle it.

He has been diagnosed as bipolar and takes medications for it.  He still has highs and

lows.  As an example, for the two weeks prior to the hearing, he was crying every day.  Over

the last two years, he has been getting slightly better.  His condition was worse before he

checked himself into PEMS in 2007.  He is currently seeing Dr. Gleason monthly for his

condition and has been seeing him regularly for about two and half to three years.

Plaintiff injured his foot in 1990, when during a fight at work, a man shot at his left

foot.  A fragment from the bullet is still in his foot.  He has suffered from residual effects and

can walk only a couple of blocks before his foot starts to hurt badly.  He has a referral to go see an orthopedic surgeon.  He also claims cramping and numbness in his foot and left leg, which becomes worse when it's cold.  His leg swells when he has walked two to three blocks. He is able to stand, but mainly keeps the pressure on his right foot.  He can stand for about forty-five minutes before needing to sit down or take a break.

Plaintiff also has had a ruptured disc in his neck since 1997.  He gets numbness in his hands and legs.  He has also been diagnosed with high blood pressure, which he is working on getting medication for.  He has blood in his stool, but he is unable to get a colonoscopy because he cannot afford it.

On a typical day, he gets up, eats, and watches a little television.  He is unable to watch an entire movie because he has a short attention span.  The same applies for chores; if he starts something, he won't finish it.  He has concentration and memory issues.  In order to understand a newspaper article, he needs to read it over and over again.  He is able to read and write.  He spends most of his time at home.  In a typical week, he goes out a few times to the store or doctor's appointments.  His mom takes him to all of his doctor's appointments; he relies on her to get around.  He does not take public transportation because he does not like being around people.  His dislike for crowds stems from being attacked in 1992.  The main reason that he cannot get a job is because he is scared to be around people.  This has been a problem for him for about five to six years.  When the problem first manifested, he continued to work for a while.

Plaintiff testified that he started getting blackouts about three to four weeks prior to the hearing.  He had an MRI of his brain done, and will be going to see a neurologist for the issue.  (R. 357-371).

The ALJ next took testimony of Teresa Manning, a vocational expert ("VE").  On a hypothetical assuming an individual of the same age, education and work experience with a residual functional capacity of medium work, with a frequent limitation for working at unprotected heights and around dangerous machinery; with occasional limitation with interacting with the public; but capable of performing routine, predictable tasks in an environment with limited work stress, the VE opined that while none of Plaintiff's past work would be available, such an individual would be able to work as a hospital cleaner, kitchen helper, or packer.

On questioning by Plaintiff's attorney, assuming the additional limitation that an individual would be unable to regularly attend to routine and maintain a schedule and would need to miss work fifty percent of the time due to a mental health condition, the VE opined that no jobs would be available.  If such an individual were to miss work for two or more days a month, there would still be no jobs available.  If there were complex tasks that the individual was unable to perform fifty percent of the time, the VE opined that such an individual would still be able to perform the aforementioned jobs since all of them were unskilled.  (R. 371-375).

4

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.  Plaintiff's date last insured for disability benefits was June 30, 2009.

By his decision of October 27, 2010, the ALJ determined that while Plaintiff has severe impairments related to bipolar disorder with polysubstance abuse in recent remission, he nonetheless had the residual functional capacity to perform a restricted range medium exertional work.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 32-42).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.*

5

at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Dyer v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## C.

The Plaintiff raises three claims on this appeal.  First, he argues that the ALJ erred in failing to consider the medical opinion of Melissa Trimmer, Psy.D.  Next, he similarly

contends the ALJ erred in failing to consider the medical opinion of Joel Gleason, M.D. Finally, he urges the ALJ erred in the consideration of claimant's symptoms. (Doc. 18). I conclude that the Court needs to only address the first and second claims.

On his first claim, Plaintiff argues the ALJ erred by failing to consider the medical opinion of an examining psychologist, Melissa Trimmer, Psy.D., rendered in March 2009. By her opinion, Plaintiff was in need of treatment and rehabilitation and unable to participate in work activities for six months. (R. 262). Contrary to applicable standards which require consideration of all the medical opinions and a statement as to the weight afforded the opinions, the ALJ wholly failed to mention this examination in the decision. (Doc. 18 at 6-7).

On his second claim, the Plaintiff similarly complains that the ALJ failed to abide by this standard in failing to address the weight given to the medical opinions of treating psychiatrist, Joel Gleason, M.D., who in June 2010 opined that Plaintiff was unable to work and was in need of six months intensive therapy or recuperation by reason of his bipolar disorder and polysubstance dependance. As a review of the Suncoast Center records reveal, Dr. Gleason consistently assessed Plaintiff's GAF at 55 and his assessment was entirely in line with Dr. Trimmer's. Nonetheless, the ALJ failed to assign any weight to the opinions from this treating doctor. In sum, he urges that the decision should be reversed and the claim remanded for further consideration. (Doc. 18 at 7-8).

In response, the Commissioner argues that the ALJ did not commit reversible error. The Commissioner concedes that the ALJ did not discuss Dr. Trimmer's March 2009 report or her opinion that Plaintiff could not work and needed treatment and rehabilitation for six months, nor did he address the weight accorded to Dr. Gleason's June 2010 opinion that

Plaintiff might not be able to work at that time and was in need of intensive therapy and/or recuperation.  However, the ALJ did not commit reversible error because the ALJ's RFC assessment and conclusion that Plaintiff would not be precluded from working for at least twelve consecutive months was actually consistent with the opinions of Drs. Trimmer and Gleason.  (Doc. 19 at 4-10).

In this Circuit, an ALJ commits reversible error where he fails to state the weight accorded to each item of impairment evidence and the reasons for his decision on such evidence.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1994); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *see also* 20 C.F.R. § 416.927(d).  Thus, the ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir.2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). In this context, "'[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflects judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Id.*(quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although an ALJ errs by failing to address and state the weight accorded the medical and psychological opinions of record, the Eleventh Circuit, albeit in unpublished cases, has held that in certain circumstances the error is harmless.  *See, e.g., Caldwell v. Barnhart*, 261

8

F. App'x 188, 190 (11th Cir. 2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error.  When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citations omitted); *Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (providing that the ALJ's failure to indicate the weight given to certain physicians was harmless error because those opinions did not directly contradict the ALJ's findings); *see also Parton v. Astrue*, No. 3:07-CV-63-J-TEM, 2008 WL 897094 (M.D. Fla. Mar. 31, 2008) (finding ALJ's failure to address a treating physician's opinion was harmless error because fully crediting the opinion would not have changed the outcome).

Here, Plaintiff is correct that the ALJ failed to even mention the assessment from Dr. Trimmer, much less any opinion that Plaintiff was "moderately limited" in performing complex tasks, attending to a routine and maintaining a schedule, maintaining basic standards of hygiene and grooming, and using public transportation, and that he was unable to participate in any activities except for treatment or rehabilitation for six months.  (R. 262).  "Moderately limited" was defined as "unable to function 50% of the time."  (R. 262).  If accurate, this limitation is significant given the VE's testimony that with such limitation, no work would be available.  (R. 374).  As for the reports from Dr. Gleason, the decision does reflect the ALJ's consideration of Dr. Gleason's treatment records.  (R.37-38).  As for the June 2010 opinion from this doctor, the ALJ expressly stated that, "[o]n June 2, 2010, Dr.

Gleason stated in his opinion the claimant may not be capable of employment as he needed assistance for six months of extensive therapy. GAF remained at 55." (R. 38). Despite noting the opinion, the ALJ failed to expressly state the weight afforded it.

In short, because the ALJ has failed to comply with the applicable standard, the decision should be reversed and the case remanded for further consideration. I have considered the Commissioner's argument that any error is harmless because the opinions do not establish any greater limitations than those assessed by the ALJ, but find it inadvisable to adopt that conclusion, which was not otherwise expressed by the ALJ.[2] As stated in *Winschel,* in the absence of any statement concerning the weight afforded the doctor's opinions, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." 631 F.3d at 1179. The mental health evidence during that period of time is largely from Dr. Gleason and his opinions are clearly entitled to substantial weight absent good cause for discounting them. As an examining psychologist, the opinions of Dr. Trimmer should have been addressed as well.

Accordingly, while I reach no conclusion about Plaintiff's disability, I do conclude

---

[2]The argument is not without some appeal. By his RFC assessment, the ALJ limited Plaintiff to only occasional public interaction and to performing routine, predictable tasks in a low-stress environment. Perhaps such is consistent with these doctors' opinions. Moreover, neither doctor stated that Plaintiff was precluded from work for at least twelve (12) months. While Dr. Trimmer found significant limitations, her opinion also indicated Plaintiff was capable of normal functioning in following simple instructions, maintaining attention and concentration for rote tasks, and performing low-stress and simple tasks. (R. 262). Finally, Dr. Gleason's opinion was only that Plaintiff was not "capable of employment at this time" and that Plaintiff would benefit from vocational rehabilitation for six months, suggesting that the doctor believed Plaintiff was capable of working in the future. (R. 307).

the decision should be reversed and the case remanded.  On this conclusion, I find it
unnecessary to address the final claim.

D.

For the foregoing reasons, the decision of the Commissioner of the United States
Social Security Administration is not supported by substantial evidence or is not in
accordance with the correct legal standards, and I recommend that it be reversed and
remanded for further proceedings before the Commissioner consistent with this Report and
Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor
of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon
further pleadings.

Respectfully submitted this
19th day of August 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

<u>**NOTICE TO PARTIES**</u>

Failure to file written objections to the proposed findings and recommendations
contained in this report within fourteen (14) days from the date of its service shall bar an
aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a
district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.
Civ. P. 6.

Copies furnished to:
United States District Judge
Counsel of Record